IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-30164-MJR |
| | ) | |
| DARRELL WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

Comes now Stephen R. Wigginton, United States Attorney for the Southern District of Illinois, and Laura V. Reppert, Assistant United States Attorney for said District, and in response to Defendant's Motion to Suppress Evidence (Doc. 26) and Defendant's Memorandum in Support of Motion to Suppress Evidence (Doc. 27) states as follows:

### FACTS

Counsel for the Government mostly agrees with what defense counsel states as "Facts" within his Memorandum in Support of Motion to Suppress Evidence. The Government believes that testimony and other evidence will adduce the following:

On July 5, 2014, a confidential informant (CI) working with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) told Special Agent Duane Clauer that Herman Smith, Jr. (Smith) had recently acquired a large amount of crack-cocaine that he was looking to sell. The CI contacted Smith on July 14, 2014 to set up a buy, and a controlled buy was conducted on July 15, 2014. The CI went to the 1600 block of Second Street in Madison, Illinois and met up with Smith in Smith's vehicle, a blue 2006 Chevrolet Impala with Illinois registration S422032. Agents were in the area conducting surveillance. The CI purchased approximately 56.7 grams of

1

suspected narcotics from Smith for $2,700. A sample tested positive for the presence of cocaine.

On July 23, 2014, under the supervision of ATF, the CI set up another buy with Smith. The CI went to the 1600 block of Second Street in Madison, Illinois, and an individual, later identified by the CI as Smith, pulled up in a silver Acura. Agents were in the area conducting surveillance. The CI purchased approximately 77.5 grams of suspected narcotics from Smith for $4,200. A sample tested positive for the presence of cocaine.

On August 5, 2014, under the supervision of ATF, the CI set up another buy with Smith. The CI went to the 1600 block of Second Street in Madison, Illinois. Smith arrived in the area on a small motorcycle. Agents were in the area conducting surveillance. The CI purchased approximately 56.7 grams of suspected narcotics from Smith for $2,800. A sample tested positive for the presence of cocaine.

Smith was indicted by a federal grand jury in the Southern District of Illinois on August 20, 2014 for violating 21 U.S.C. § 841, Distribution of a Controlled Substance, and an arrest warrant was issued. Leading up to August 28, 2014, agents from ATF conducted surveillance on the address of 1516 Second Street, Madison, Illinois, having received information that this address was Smith's residence. Agents observed Smith's vehicle, the 2006 Chevrolet Impala with Illinois registration S422032, parked in front of 1516 Second Street numerous times.

On August 28, 2014, ATF agents met for a pre-arrest briefing. Photographs of Smith and the front of 1516 Second Street were disseminated. Agents then went to 1516 Second Street to execute the arrest warrant for Smith. Smith's Impala was parked in front. Agents knocked on the front door and a female answered.

It is at this point in the timeline of facts where counsel for the Government would dispute facts proffered by defense counsel. Special Agent Matthew Inlow and other agents asked the

female who answered the door where Smith was. Her response was something to the effect of "he stays out back." Defense counsel indicates that "at least one witness will testify that the agents were advised that Smith resided in the first floor apartment" (Doc. 26, Page 2, Lines 3-4). At no point were ATF agents told that Smith resided in a first floor apartment.

When agents went to the rear of 1516 Second Street, they discovered a separate free standing, unmarked, two story building. Stairs led up to a second floor exterior door and an exterior door was located behind hedges on the first floor. Neither door was marked with any distinguishing apartment number or letter. Agents were unaware as to the interior layout of the building.

As soon as agents went towards the rear building, they observed a black male, resembling Smith[1], peer out from a second floor window and then retreat within the residence. Some agents ascended the stairs to the second floor exterior door, while others maintained a position at the lower floor's exterior door. The agents at the upper door knocked on the door and announced police presence. No one came to the door. After some time, and believing that contraband was being destroyed, agents forced entry. When they entered and started clearing the residence, they saw a black male, identified as the Defendant, exiting a bathroom located at the back of the residence. Agents detained the Defendant and observed – floating in the running toilet – a large amount of suspected crack cocaine. An agent immediately fished the substance out of the toilet water and placed it on the bathroom floor. Agents left the residence, secured it, and obtained a federal search warrant to seize those suspected narcotics and search for additional contraband. The suspected narcotics seized from the toilet were individually packaged in twelve separate baggies, field tested positive for crack-cocaine, and weighed 539.4 grams, including packing material.

---

[1] Smith and Defendant are, in fact, brothers.

ARGUMENT

The Fourth Amendment protects citizens from unreasonable searches and seizures of their person, houses, papers, and effects. Warrantless searches or seizures inside a home are presumptively unreasonable; however, "the ultimate touchstone of the Fourth Amendment is 'reasonableness'" and so there are reasonable exceptions to the warrant requirement. *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). It is "well established that 'exigent circumstances,' including the need to prevent the destruction of evidence, permit police officers to conduct an otherwise permissible search without first obtaining a warrant." *Id.* at 1853-1854.

In *King*, officers conducted an undercover buy of crack cocaine outside of an apartment complex. One officer watched the buy from an unmarked vehicle nearby. *Id.* at 1854. Once the deal was completed, that officer radioed other officers to move in on the suspect, stating that the suspect was moving quickly towards the breezeway of an apartment building and to hurry up before the suspect made it into an apartment. *Id.* As the responding officers made it to the breezeway, they heard an apartment door shut and smelled a "very strong odor of burnt marijuana." *Id*. Officers saw two apartments and did not know which one the suspect ran into. *Id.* They approached the door where the marijuana smoke was coming from. *Id.* They knocked and announced their presence, and upon hearing people moving around inside the apartment and believing evidence was about to be destroyed, made entry into that apartment. *Id.* Officers found cocaine and marijuana in plain view. *Id.* The suspect from the undercover crack cocaine buy was in the other apartment. *Id.* at 1855.

The Kentucky Supreme Court held that the exigent circumstances exception to the warrant requirement did not apply to these facts because the police should have foreseen that their conduct would prompt the occupants to attempt to destroy evidence. *Id.* at 1854. The United States

Supreme Court rejected that interpretation of the exigent circumstances rule and held that the conduct of the police prior to their entry of that apartment was entirely lawful. *Id.* Implicit in its finding is that the fact the original suspect was in the other apartment was not determinative of whether a Fourth Amendment violation occurred. Specifically, the court stated,

> … warrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense of the warrant requirement… the exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable in the same sense. Where, as here, the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed. *Id*. at 1858.

In so holding, the Court rejected numerous additional requirements to the exigent circumstances rule developed by lower courts, including the "reasonable foreseeability" requirement noted by the Kentucky Supreme Court. Discussing that requirement, the Court noted that "the calculus of reasonableness must embody the allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." *Id.*, at 1860 (quoting *Graham v. Connor*, 490 U.S. 386, 396-397 (1989)).

This is a case of exigent circumstances. A federal grand jury found sufficient evidence to indict Smith for distributing crack cocaine in very close proximity to 1516 Second Street in Madison, Illinois. When officers received information from a confidential informant that Smith lived at 1516 Second Street, they conducted surveillance of that residence to verify that information. On numerous occasions, agents observed Smith's Impala parked at that residence. At the pre-arrest briefing on August 28, 2014, a photo of the ranch house at 1516 Second Street and a photo of Smith were distributed to the arrest team. When agents arrived at 1516 Second Street, Smith's Impala was parked in front. Again, agents were told by the female who answered the door of that ranch house that Smith "stayed out back." They were not told that Smith resided on the

5

lower floor, let alone told that there were two apartments at all. That rear building had no signage or other distinguishing markings demonstrating that there were two apartments, and about as soon as agents made it to the rear of the ranch style house, they saw a black male closely resembling Smith peer out a second floor window and immediately retreat within the residence. It was entirely reasonable for officers to believe that was Smith, and they knocked and announced their presence at the second floor exterior door. When no one came to the door, and knowing what the substance of the indictment was, they believed that evidence was being destroyed and forced entry to prevent any destruction of evidence. As soon as they fished out the contraband from the toilet and realized that it was Defendant and not Smith, they secured the residence and then applied for a federal search warrant, which was authorized.

With these facts, requiring officers to first go and request a search warrant from a magistrate judge thwarts the purpose of having the exigent circumstances exception to the warrant requirement. As the court in *King* stated, officers must often make split-second decisions in rapidly evolving circumstances. Contrary to defense counsel's assertions, the agents' conduct prior to and during the entry of the second floor of that rear building was absolutely reasonable.

In support of his position, defense counsel cites *Maryland v. Garrison*, where the court examined the validity of a search warrant and the reasonableness of the manner in which the search warrant was executed. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). The police executing the search warrant believed there was one apartment on the third floor of an apartment building when there were, in fact, two apartments. *Id.* at 80. Courts determined that the officers made a reasonable investigation prior to obtaining the search warrant, including the verification of information from a reliable informant, an external examination of the three story building at 2036 Park Avenue, and a check of utility records, and the officers conclusion that there was only one apartment was

reasonable. *Id.* at 81. The Court in *Maryland v. Garrison* stated:

> If the officers had known, or should have known, that the third floor contained two apartments before they had entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been obligated to limit their search to McWebb's apartment. Moreover, as the officers recognize, they were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant… While the purposes justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants. *Id.* at 86-87.

*Garrison* is distinguishable from this case in that at issue in *Garrison* was the reasonableness of the execution of a search warrant authorized by a judge, and not the existence of exigent circumstances. The analysis in *Garrison* focuses solely on the reasonableness of the investigation leading up to procuring a search warrant and mistaken belief upon executing the search warrant. As exigent circumstances allow agents to conduct a search without first procuring a warrant, *Garrison* does not apply to this case. That being said, and as previously described, agents in this case took care and acted reasonably to verify that Smith resided at 1516 Second Street prior to the execution of the arrest warrant and reasonably acted on the information provided by the female that Smith "stayed out back." Defense counsel submits that the outside of the rear building "clearly shows that there are separate residences on the first and second floors." (Doc. 27, Page 4). The Government disagrees. That rear building had nothing to "clearly" show there were two separate residences other than the existence of a staircase to a second floor exterior door – no apartment letters like 'A' or 'B,' no numbers like '1' or '2,' no mailboxes.

Defense counsel also cites *Steagald v. United States*, 451 U.S. 204 (1981), which held that absent exigent circumstances, law enforcement could not legally search for the subject of an arrest warrant in the home of a third party, without first obtaining a search warrant. Again, here agents

7

reasonably believed that this was the home of the subject of the arrest warrant and exigent circumstances existed to support entry into the upper floor of that rear building.

Sprinkled throughout courts' examinations of potential Fourth Amendment violations are discussions and analysis of reasonableness to determine whether violations of the Fourth Amendment exist. Here, the agents acted reasonably and prudently – certainly within the bounds of the law.

## CONCLUSION

Wherefore counsel for the United States of America respectfully requests that this Honorable Court deny Defendant's Motion to Suppress Evidence.

                                                   Respectfully submitted,

                                                   STEPHEN R. WIGGINTON
                                                   United States Attorney

*s/ Laura V. Reppert*
LAURA V. REPPERT
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL   62208
Tel: (618) 628-3700
Fax:   (618) 628-3730
E-mail: Laura.Repper@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-30164-MJR |
| | ) | |
| DARRELL WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

**Certificate of Service**

I hereby certify that on October 27, 2014, I caused to be electronically filed **Government's Response to Defendant's Motion to Suppress** with the Clerk of Court using the CM/ECF system, which will send notification to the following registered participant:

William Stiehl, Jr.

    Respectfully submitted,

    STEPHEN R. WIGGINTON
    United States Attorney

    s/Laura V. Reppert
    LAURA V. REPPERT
    Assistant United States Attorney
    Nine Executive Drive
    Fairview Heights, IL   62208
    Tel: (618) 628-3700
    Fax:  (618) 628-3730
    E-mail: Laura.Repper@usdoj.gov